## Case No. 15,342.

### UNITED STATES v. The HELENA.

[5 McLean, 273.] [1]

Circuit Court, D. Michigan. June Term, 1851.[2]

CUTTING TIMBER RESERVED FOR NAVAL PURPOSES —FORFEITURE OF VESSEL.

To bring a case within the second section of the act of congress of March 2, 1831 [4 Stat. 472], entitled an act to provide for the punishment of offenses committed in cutting, destroying, or removing live oak and other timber or trees for naval purposes, the libel must allege that the timber transported by the vessel, &c., to incur a forfeiture, was knowingly by the master, &c., taken from lands reserved for naval purposes, or that the timber so transported, was cut on lands of the United States, not so reserved, and was "live oak or red cedar."

[Cited in Leatherbury v. U. S., 32 Fed. 782; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 422.]

[See U. S. v. Schuler, Case No. 16,234.]

[Appeal from the district court of the United States for the district of Michigan.]

In admiralty.

Mr. Bates, Dist. Atty., by Mr. Watson, for the United States.

Mr. Wilson, for defendants.

OPINION OF THE COURT. The libel in this case states that the schooner Helena was, on the 1st of August, 1850, seized by the collector of Detroit, within the district of Michigan, as forfeited to the United States for having, with the knowledge of the owner of the vessel, taken on board timber cut on lands belonging to the United States, without proper authority in writing, &c., to transport the same to a port or place within the United States, to wit, from the state of Michigan, to Chicago in Illinois, &c.; that said schooner transported, as aforesaid, thirty thousand feet of lumber, manufactured from timber cut on the lands of the United States, &c., with intent to defraud the

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reversing Case No. 15,341.]

United States, and contrary to the force, form, and effect, of section 2 of the act of congress of March 2, 1831, &c. Theodore Newell, owner and claimant of the schooner, by his attorney, filed his answer, that he had not taken on board with the knowledge of the master, owner, or consignee, and transported any timber prohibited by the above act, and for which a forfeiture of his vessel had been incurred, and averred a want of jurisdiction under the act. This answer and plea were subsequently overruled by the court, and the jurisdiction of the court was sustained, and a forfeiture of the vessel was, pro forma, decreed [Case No. 15,341], from which an appeal was taken by the defendant, to this court.

The decision of this case depends upon the construction of the act of congress above stated. When we look to the title of the act, and the third and last sections, it would seem to have for its object, the protection of timber specially reserved for the navy. The title is, "An act to provide for the punishment of offenses committed in cutting, destroying, or removing live oak and other timber or trees reserved for naval purposes." And the third section provides, "that all penalties and forfeitures under the provisions of this act shall be sued for, recovered, and distributed, and accounted for, under the directions of the secretary of the navy; and shall be paid over, one half to the informer or informers, if any, or captors, where seized, and the other half to the commissioners of the navy pension fund," and the said commissioners are authorized to remit, in whole, or in part, any fine, penalty, or forfeiture incurred under the act.

The act, as construed, punishes, on indictment and conviction, by fine and imprisonment, any one who shall cut timber on the public lands. Now it would seem to be rather an anomaly in legislation, to place under the control of the commissioners of the navy pension fund, and for the special benefit of such fund, all prosecutions by indictment for cutting timber upon the public lands, which comprise several hundred millions of acres. We can readily conceive why timber reserved for the navy should be under their control, the subject being intimately connected with that branch of the public service. But no reason is perceived why they should exercise the power to remit all forfeitures and penalties arising under the act. Such a power could never have been intended by congress to extend to trespasses on all the lands of the United States. And when we consider the policy of congress in giving, for more than twenty years past, pre-emptive rights to settlers upon the public lands, who have made improvements thereon, it would not seem to comport with a prosecution by indictment, fine, and imprisonment, under this law. This may be speaking against authority, as

the supreme court decided, in the case of U. S. v. Briggs, 9 How. [50 U. S.] 351, that for cutting "other timber" than that which has been reserved for naval ·purposes, an individual under this law may be indicted. fined. and imprisoned. There has not been a settler upon the public lands for the last twenty years, who might not have been indicted. if prosecuted before the pre-emption right to the land was given to him by law.

Now here the act of trespass upon the public lands is very differently treated by congress. according to this construction. In the one case an individual is indicted, fined, and imprisoned. In the other, the law gives him a right to .the land over all others, where he has made an improvement upon it. An improvement cannot, very well, be made in a timbered country, without cutting timber. And one cannot but reflect how fortunate one individual is, who secures the land by his trespass, over the other who is punished, by indictment, fine, and imprisonment. Could congress have intended to punish in the one case, and reward in the other, trespasses, equally in violation of law? It is true, some trespassers cut the timber and convey it off the ground, whilst others remain on the ground, and continue the trespass, by cutting the timber, and using it for their own purposes. To the trespasser with a continuando the land is given, whilst the other is indicted, fined, and imprisoned. The .settler will of course select the most valuable tract, in reference to the soil and timber, the other selects the best timber without reference to the soil.

In view of the liberal policy of congress to · settlers upon the public lands. I had supposed that the above act might be so construed. as intended to protect. by the stringent means provided. only timber reserved for naval purposes; or, at least, timbers used for the navy, as "live oak and red cedar."

The first section of the act declares. "that if any person shall cut. &c.. any live oak or red cedar tree or trees, or other timber. standing. growing. or being on any lands of the United States. which. in pursuance of any law passed. shall have been reserved or purchased for the use of the United States, for supplying or furnishing therefrom. timber for the navy of the United States." "or, if any person shall remove, &c.. from any such lands which shall have been reserved or purchased as aforesaid. any live oak or red cedar tree or trees, or other timber," &c.. "or if any person or persons shall cut. &c., any live oak or red cedar tree or trees, or other timber on, or shall remove, &c.. any live oak or red cedar trees, or other timber. from any other lands of the United States. acquired or hereafter to be acquired. every person so offending." &c. In the case above cited of U. S. v. Briggs, under the words. "other timber." from any other lands of the United States, or "hereafter to be acquired." &c.,

the person charged was held liable to be indicted for cutting timber under the statute, and that is the extent of the decision. It must be admitted that the words referred to, if not restrained by other provisions of the act, may be so construed. And this construction having been given to them by the supreme court. it concludes all inferior jurisdictions.

But the question as to the forfeiture of the vessel, is governed by the second section. That provides, "that if the master, owner, or consignee of any ship or vessel shall. knowingly, take on board any timber cut on lands, which shall have been reserved or purchased as aforesaid," &c.; "or shall take on board any live oak or red cedar timber cut on any other lands of the United States. with intent to transport the same, the ship or vessel on board of which the same shall be taken or seized, shall, with her tackle. apparel. &c., be forfeited to the United States." &c. Now, the question here arises, whether the vessel incurs a forfeiture under the above provision. by transporting, &c.. any timber not taken from lands reserved for naval purposes. or if taken from other lands of the United States, not so reserved. which is not "live oak or red cedar." The words of the section are so explicit, that there would seem to be no doubt of their meaning. The first part of the provision undoubtedly applies to lands reserved. and it is equally clear that the second part embraces lands not reserved. A forfeiture is incurred if the vessel take on board any timber cut on the lands reserved; but to incur a forfeiture. under the second provision, for taking timber from lands not reserved for naval purposes. it must be "live oak or red cedar."

It is insisted that the words in the second section. "purchased as aforesaid." refers to the words of the first section. "or other timber from any other lands of the United States. acquired or hereafter to be acquired." That under the construction given to the first section, these words subject the person removing the timber to an indictment, fine. and imprisonment, is admitted; but the words "purchased as aforesaid" cannot. by any fair interpretation. be made to refer to any other words in the first section, than the identical words which are there used. "Or if any person or persons shall remove, &c.. from any such lands which shall have been reserved or purchased as aforesaid." is .the language of the first section. And they are the same words used in the second section. and are used in the same connection. That this is the correct construction is manifest from the fact. that the second section also provides, in the words which follow. that "live oak or red cedar" taken on board from other lands than those reserved. shall cause a forfeiture of the vessel. Now, if the words in the second section, "purchased as aforesaid." refer, as contended. to lands not reserved. this provision was unnecessary. It

limits the forfeiture to "live oak and red cedar;" but if. the reference contended for be the true construction, then the forfeiture of the vessel is incurred. for transporting any kind of timber cut on the public lands. If timber of any kind, even for fire-wood, were taken on board from an improvement of an occupant, to whom a pre-emptive right was subsequently given by law, the vessel would be forfeited. Such a construction would make the second section inconsistent in its provisions, which ought never to be done by construction. It would impose a forfeiture of the vessel for taking on board timber from reserved lands, from lands not reserved, and then only for taking from unreserved lands, "live oak and red cedar."

It is immaterial what an attorney general may have suggested as necessary or proper to prevent trespasses, at one time, or what may be supposed to have been the intention of congress, from circumstances or facts out of the law; their meaning must be ascertained from the language of the act. And where that language is susceptible of but one construction. no other can be given. As now construed, the law punishes trespassers by fine and imprisonment, when convicted on an indictment; civil actions for trespass may be brought, and under an early act, the troops of the United States may be used in forcing trespassers from the public lands. These remedies would seem to be ample to protect the public property. If, in addition to these, the forfeiture of the vessel used be necessary, congress can so provide. It is enough to say that, in the act under consideration, they have not so provided, in regard to the vessel which shall transport timber from public lands not reserved for naval purposes, unless it be "live oak or red cedar." And such a provision shows that they did not intend to embrace other timber.

The charge against the vessel in the libel is general, of having taken on board a large amount of lumber, and transported it. &c., without an allegation that it was taken from lands reserved for naval purposes, or that it was "live oak or red cedar:" the case, therefore, is not brought within the statute; the procedure for the forfeiture of the vessel cannot be sustained. The decree of the district court is, therefore, reversed, and the libel is dismissed. This decision will not interfere with the procedure of the government against the timber on board of any vessel, which has been taken from the public lands